IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-257-FL-BM

| | | |
|---|---|---|
| JENNIFER HARDIMAN,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM AND RECOMMENDATION** |

Plaintiff Jennifer Hardiman ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). This matter is before the court on Plaintiff's brief [DE-11] ("Pl.'s brief") seeking judgment in her favor, Defendant's responsive brief [DE-12] ("Def.'s Brief") in opposition, and Plaintiff's reply brief [DE-13] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's brief [DE-11] be allowed, Defendant's brief [DE-12] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed applications for a period of disability, DIB, and SSI on April 22,

2022, alleging disability beginning April 14, 2022. Transcript of Proceedings ("Tr.") 111-12, 260-74. Her claim was denied initially. Tr. 111-30, 147-56. Plaintiff filed a request for reconsideration (Tr. 157-58), and was denied upon reconsideration on April 28, 2023 (Tr. 131-46, 159-66). On June 26, 2023, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 167-68. A hearing before the ALJ was held on December 6, 2023, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 81-110. On February 28, 2024, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 47-80.

On April 11, 2024, Plaintiff requested a review of the ALJ's decision by the Appeals Council (Tr. 256-57) and submitted additional evidence as part of her request (Tr. 20-39). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Plaintiff's request for review on January 22, 2025. Tr. 13-19. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In

reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Where the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11-CV-00054, 2012 WL 1836280, at *1 (W.D. Va. May 19, 2012) (quoting *Wilkins v. Sec'y, Dep't of Health & Hum. Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise

> incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and §§ 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 76. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since April 14, 2022, the alleged onset date. Tr. 53.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: obesity; residuals of lower extremity fracture to include post traumatic arthritis; degenerative disc disease, lumbar spine; an affective disorder, variously diagnosed as mood disorder, depression,

and bipolar disorder; post-traumatic stress disorder; and an anxiety disorder. Tr. 53. The ALJ also found Plaintiff had the following non-severe impairments: diarrhea; COVID-19 infection; rib fractures; hypertension; gastric ulcer; constipation; urinary retention; hypomagnesemia; iron deficiency anemia; renal stone; HPV; upper respiratory infection; vitamin D deficiency; cystitis; hematuria; gastroesophageal reflux disease; hiatal hernia; cellulitis; pyuria; prediabetes; hypothyroidism; hyperlipidemia; opioid use disorder; cocaine use disorder; and methamphetamine use disorder. Tr. 53. At step three, however, the ALJ concluded these impairments, both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 54.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Tr. 56.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[1] with the following limitations:

> she can sit six hours in an eight-hour workday; stand and/or walk six hours in an eight-hour workday; must have the flexibility to exercise a sit/stand option wherein

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. SSR 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

> she can sit for unlimited amounts of time and stand for 30 minutes at a time; lift and carry 20 pounds occasionally and 10 pounds frequently and can push and pull in accordance with those lifting and carrying limitations; never climb ladders, scaffolds, or ropes; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; can understand and remember simple instructions and can use judgment to make simple work-related decisions; can sustain concentration, attention, and pace sufficient to carry out simple, routine, repetitive tasks over the course of an eight-hour workday and at least at two-hour intervals; can work in occupations that require only occasional contact with coworkers, supervisors, and the public; and can deal with occasional changes in work routines and in the work setting.

Tr. 57.

In making this assessment, the ALJ found Plaintiff's statements about her limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 58.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of any past relevant work as actually or generally performed. Tr. 74. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. Tr. 75-76.

## V. OVERVIEW OF PLAINTIFF'S CONTENTIONS

In this case, Plaintiff alleges the ALJ erred by: (1) "failing to properly evaluate the medical necessity of plaintiff's handheld assistive device pursuant to SSR 96-9p"; (2) "improperly rejecting the medical opinion of Kathryn Roys, PA-C, by substituting his own lay medical opinion regarding leg elevation requirements"; (3) "failing to adequately evaluate plaintiff's obesity pursuant to SSR 19-2p"; and (4) preventing meaningful judicial review because the "Commissioner's RFC assessment contains internal inconsistencies that prevent meaningful judicial review and require

remand." Pl.'s Brief [DE-11] at 2.[2] Each will be discussed below.

## VI. DISCUSSION

### A. Handheld Assistive Device

Plaintiff alleges the ALJ failed "to properly evaluate the medical necessity of plaintiff's handheld assistive device pursuant to SSR 96-9p". Pl.'s Brief [DE-11] at 2. The Commissioner counters that the "ALJ provided a clear and concise analysis of why an assistive device was not required and why one was not included in the RFC." Def.'s Brief [DE-12] at 7. The Commissioner also provides that the "ALJ is not required to include any additional alleged limitations in the RFC that he did not find was supported by the record evidence. *See Lee v. Sullivan,* 945 F.2d 687, 692 (4th Cir. 1991) (ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record)." *Id.*

When considering an assistive device in the context of the listing requirement at step three of the sequential evaluation process, an ALJ must consider the regulations of Appendix 1 to Subpart P of Part 404. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. These regulations provide that:

> When we use the phrase 'documented medical need,' we mean that there is evidence from a medical source that supports your medical need for an assistive device . . . for a continuous period of at least 12 months . . . . This evidence must describe any limitation(s) in your upper or lower extremity functioning and the circumstances for which you need to use the assistive device. We do not require that you have a specific prescription for the assistive device.

20 C.F.R. Part. 404, Subpart. P, App. 1, § 1.00C(6)(a).

The regulations further explain that using "a one-hand, hand-held assistive device

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

[("HHAD")] . . . with one upper extremity to walk . . . limits the use of both upper extremities" in cases where the individual "cannot use [their] other upper extremity for fine or gross movements." 20 C.F.R. Part. 404, Subpart. P, App. 1, § 1.00C(6)(d). This regulation further specifies "if you use a hand-held assistive device, we need evidence from a medical source describing how you walk with the device." *Id.*

At step four of the sequential evaluation process, in assessing a claimant's RFC, under SSR 96-9p, an "ALJ must consider the impact of a 'medically required' hand-held assistive device on a claimant's functional capacity." *Williams v. Berryhill*, No. 5:17-CV-408-D, 2018 WL 4576781, at *3 (E.D.N.C. May 17, 2018) (first citing *Taylor v. Berryhill*, No. 5:17-CV-78-FL, 2018 WL 852396, at *3 (E.D.N.C. Jan. 10, 2018); then citing SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)). For a hand-held assistive device to be considered medically necessary, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7.

Plaintiff, therefore, "must have presented medical documentation (1) establishing the need for [her] cane and (2) describing the circumstances for which it is needed." *Fletcher v. Colvin*, No. T14CV380, 2015 WL 4506699 *8 (M.D.N.C. July 23, 2015). "Self-reports and references in the record from physicians that a claimant presented with an assistive device are not sufficient; there must be 'an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary.'" *Johnson v. Berryhill*, No. 2:15CV00028, 2017 WL 722063, at *9 (W.D. Va. Feb. 23, 2017) (quoting *Tripp v. Astrue*, 489 F.App'x. 951, 955 (7th Cir. 2012)). "Moreover, a prescription or the lack of a prescription for an assistive device is not necessarily

dispositive of medical necessity." *Fletcher*, 2015 WL 4506699, at *8 (citing *Staples v. Astrue*, 329 F. App'x 189, 191-92 (10th Cir. 2009)); *see also Peake v. Berryhill*, No. 5:17-CV-01998, 2018 WL 1178256, at *15 (S.D.W. Va. Feb. 8, 2018) ("Even when a cane is prescribed by a physician, it may not be accepted as 'medically required' under Social Security regulations and rulings."), *report and recommendation adopted,* No. 5:17-CV-01998, 2018 WL 1177354 (S.D.W. Va. Mar. 6, 2018).

When considering Plaintiff's need for a HHAD, the ALJ stated that "no provider has described the claimant walking with a HHAD" and "treatment records do not contain the detailed documented medical need for a HHAD as required by the listing and SSR 96-9p." Tr. 72. The ALJ highlights that "when [Plaintiff] was provided her walker, the examination that day revealed that [Plaintiff] walked with a 'smooth reciprocal gait;' she had normal alignment, good motor strength, and good range of motion" and that "there was nothing on examination that day to warrant the issuance of a walker." *Id.* The ALJ concluded "it simply cannot be said that the medical evidence of record establishes that a HHAD is medically necessary in accordance with the *strict* guidelines of listing 1.00C6 and SSR 96-9p." *Id.* (emphasis added).

Plaintiff argues that "the ALJ failed to properly apply SSR 96-9p when evaluating whether Plaintiff's prescribed walker was medically necessary," and specifically that "[t]he ALJ appears to have used a very restrictive interpretation of the Rules describing them as 'strict,' which is undermined by SSR 96-9p's specific circumstantial language." Pl.'s Brief [DE-11] at 9 (citing Tr. 72).

The undersigned is unpersuaded by Plaintiff's argument. An ALJ can apply SSR 96-9p's circumstantial language while also considering the specific requirements of the regulation. As noted above, the regulations expressly provide that one or more prescriptions of a HHAD are not

dispositive on the question of whether a HHAD is medically required. The ALJ explained why he did not find a HHAD to be medically required in light of multiple reports of Plaintiff's ability to walk without an assistive device. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original) ("In reviewing for substantial evidence, [it is not the court's role to] to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].") (quoting *Craig*, 76 F.3d at 589).

Furthermore, the undersigned does not find that the medical documentation describes the circumstances for which a HHAD is needed. Tr. 72. Plaintiff argues that "the ALJ's analysis fails to address whether the walker might be needed for balance, which SSR 96-9p specifically recognizes as a circumstance that may significantly erode the occupational base." Pl.'s Brief [DE-11] at 11. Yet while Plaintiff discussed balance issues at the appointment where she requested a prescription for a walker (Tr. 1047), the associated medical records do not reference this limitation as the circumstance for which the walker was needed. Tr. 1048.

Accordingly, the undersigned does not find that the ALJ's discussion of Plaintiff's need for an assistive device requires remand.

**B. Medical Opinion of Kathryn Roys, PA-C**

Plaintiff alleges the ALJ "improperly rejec[ted] the medical opinion of Kathryn Roys, PA-C ("Ms. Roys"), by substituting his own lay medical opinion regarding leg elevation requirements." Pl.'s Brief [DE-11] at 2. The Commissioner provides that the ALJ "appropriately articulated and offered a comprehensive rationale for deeming Ms. Roy's opinion unpersuasive, inconsistent with the record, and unsupported by the evidence." Def.'s Brief [DE-12] at 11-12.

The ALJ noted Plaintiff's well-woman visit with Ms. Roys on January 4, 2023. Tr. 66. The ALJ specifically noted Ms. Roys' findings that "[t]he bilateral lower extremities had no

deformities, masses, tenderness, known fractures, instability subluxation, or laxity" and "[t]hey had normal strength and tone." Tr. 66. The ALJ noted that "Ms. Roys diagnosed leg swelling and prescribed compression socks, which she should wear as much as possible, and she should keep her legs elevated." Tr. 67 (citing Tr. 1011).

With respect to Ms. Roys' recommendation that Plaintiff elevated her legs, the ALJ found that to the extent this recommendation represented an "opinion that the claimant requires leg elevation, that opinion is not consistent with or supported by the medical evidence of record, which does not reflect the presence of signs or symptoms that would require lower extremity elevation after the acute phase of her injury." Tr. 72-73. The ALJ also found that a recommendation for leg elevation was not persuasive because "Ms. Roys did not observe any edema in the bilateral lower extremities when she examined the claimant . . . , nor did her orthopedist . . . ." Tr. 73.

The ALJ found Plaintiff's subjective reports that she needs to elevate her legs every time she sits down inconsistent. Plaintiff's "physical exams showed no edema in her bilateral lower extremities (8F, 9F), except for one instance in October 2023 where she was noted to have minimal swelling (Ex. 9F). Tr. 58 (first citing Tr. 807 (noting an absence of bilateral edema on June 2, 2022)); (then citing 1009-1070).

Yet at the January 4, 2023 appointment, Ms. Roys expressly found that Plaintiff had "[b]ilateral[,] non-pitting edema" in her lower extremities. Tr. 1010. Ms. Roys' recommendation for Plaintiff to "[k]eep legs elevated" was provided with respect to "plans" for Plaintiff's "[l]eg swelling." Tr. 1011. Moreover, even without such a finding, the longitudinal record demonstrates repeated reports of edema and swelling. *See, e.g.*, Tr. 773 (Rachel Merton, N.P. noting "[m]oderate edema over the foot" on April 19, 2022); Tr. 652-68 (Hanci Zhang, M.D. noting "[m]oderate edema about the [right] foot" from May 2-4, 2022); Tr. 810 (Susan Fuller, FNP noting swelling

but no edema in the right lower leg and right foot); Tr. 790 (Jennifer Dye, PA noting mild edema of the foot on May 18, 2022); Tr. 1020 (Ms. Roy observing "mild nonpitting edema" of the right ankle on July 5, 2023); Tr. 1024 (Ms. Roy observing "mild nonpitting edema" of the right ankle on October 6, 2023); Tr. 1055 (Carl Smith, M.D. noting "[m]inimal swelling" upon exam on October 19, 2023); Tr. 1066-67 (Ambria Mcarthur, PA-C noting "generalized soft tissue swelling" of Plaintiff's right ankle on October 24, 2023).

It is unclear whether the ALJ even considered all of the instances observing edema or swelling in Plaintiff's lower extremities. An ALJ is not required to discuss every piece of evidence in the record. *See Reid v. Comm'r of Soc. Sec.,* 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). Yet before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless*, 131 F.3d at 439-40. Here, the absence of any meaningful discussion on references in the medical record to Plaintiff's swelling and edema leaves the undersigned unable to determine whether the ALJ's decision is supported by substantial evidence. Accordingly, the undersigned recommends that this case be remanded for further proceedings.

While the ALJ may ultimately determine, based upon the evidence, that the limitations recommended by Ms. Roys are still unpersuasive, such analysis must come from the ALJ in the first instance after considering all relevant evidence. On remand, the Commissioner should make findings that sufficiently explain the probative evidence, and that would permit meaningful judicial review, if necessary. *See Monroe*, 826 F.3d at 189 (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)).

### C. Plaintiff's Obesity

Plaintiff alleges the ALJ erred by "failing to adequately evaluate plaintiff's obesity pursuant to SSR 19-2p." Pl.'s Brief [DE-11] at 2.

The Commissioner argues that the "ALJ properly accounted for her obesity by restricting her to performing work at reduced level of light level of exertion, with additional postural limitations including the sit/stand option (Tr. 57, 71)." Def.'s Brief [DE-12] at 18. The Commissioner also maintains that the "ALJ properly evaluated Plaintiff's obesity, it's impact on her ability to engage in work, and accounted for her obesity in the RFC." *Id*.

The ALJ found Plaintiff's obesity represented a severe impairment. Tr. 53. When considering Plaintiff's obesity, the ALJ summarized that Plaintiff "present[ed] with body mass index scores ranging from 35 to 38 to 39 to 43, to a high of 47.01" and found that Plaintiff's "obesity exacerbates her musculoskeletal impairments, further reducing her [RFC], especially in terms of performing postural maneuvers, and, so, is severe." Tr. 70.

Plaintiff argues that "[t]he ALJ's conclusion that obesity affects Plaintiff's ability to perform 'postural maneuvers' is conclusory and lacks the detailed function-by-function analysis required by *Woods v. Berryhill*, 888 F.3d at 689." Pl.'s Brief [DE-11] at 22. Plaintiff further contends that "[t]he ALJ failed to explain how Plaintiff's morbid obesity, with BMI measurements exceeding 47, specifically impacts her ability to sit, stand, walk, lift, carry, or perform other work-related functions in combination with her other severe impairments." *Id.* Plaintiff claims that "[t]his failure is particularly significant given Plaintiff's other severe impairments, including 'residuals of lower extremity fracture to include post traumatic arthritis' and 'degenerative disc disease, lumbar spine.'" *Id.* at 23 (quoting Tr. 53).

Plaintiff's argument in this regard is unpersuasive. As an initial matter there is no "per se

rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021). Courts have found remand warranted where the ALJ fails to assess a "contested" function that is "critically relevant to determining [a claimant's] disability status . . . ." *Id.* at 388-89 (remanding case where the ALJ failed to evaluate the plaintiff's ability to sit when it was a contested function critical to determining the plaintiff's disability status, and stating that the ALJ should have included "an analysis [of plaintiff's ability to sit] that was separate from the ALJ's appraisal of [the plaintiff's] ability to perform other functions, and [this analysis] should have been accompanied by 'a narrative discussion describing' the evidence supporting it").

Plaintiff appears to make a conclusory argument that her ability to "sit, stand, walk, lift, carry, or perform other work-related functions" all represent contested functions. In short, Plaintiff appears to simply be contesting a large part of the RFC in general.

The ALJ considered and summarized evidence relevant to various functions including Plaintiff's reports that she "had been sitting around the house"; medical records observing "gait and station was true"; as well as 5/5 strength in all muscles. *See* Tr. 66. Plaintiff appears to be faulting the ALJ for not expressly discussing how her obesity specifically impacted specific individual functions. Yet Plaintiff herself acknowledges that obesity impacts the RFC in light of "the combined effects of morbid obesity with Plaintiff's other severe impairments." Pl.'s Brief [DE-11] at 23. The ALJ explained that she accommodated Plaintiff's obesity by "reducing her [RFC], especially in terms of performing postural maneuvers." Tr. 70. Social Security Regulations consider the following activities to be postural in nature: "climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, [and] crawling." SSR 96-9p. Given the intensely physical nature of these activities, there is substantial evidence to support the ALJ's finding that

obesity would exacerbate the limitations of Plaintiff's other musculoskeletal impairments in these areas.

In sum, Plaintiff's argument appears to simply represent a request to reweigh conflicting evidence related to Plaintiff's obesity, which is not the court's role. *Cf. Johnson*, 434 F.3d at 653. Accordingly, the undersigned does not find that remand is necessary on this issue.

**D. RFC Assessment**

Plaintiff alleges the ALJ erred as "Commissioner's RFC assessment contains internal inconsistencies that prevent meaningful judicial review and require remand." Pl.'s Brief [DE-11] at 2. Specifically, Plaintiff argues that there is "an inherent contradiction" between the RFC requirements that that Plaintiff 'can sit six hours in an eight-hour workday; stand and/or walk six hours in an eight-hour workday[but] must have the flexibility to exercise a sit/stand option wherein she can sit for unlimited amounts of time and stand for 30 minutes at a time." Pl.'s Brief [DE-11] at 26.

The Commissioner asserts that the "ALJ gave Plaintiff the benefit of the doubt and gave Plaintiff the RFC for a reduced range of light work (Tr. 57)." Def.'s Brief [DE-12] at 18.

In light of the above recommendation that this case be remanded to the Commissioner to consider Ms. Roys' recommended limitation of leg elevation, and as the findings on remand may be substantially different, the undersigned does not make a recommendation regarding Plaintiff's arguments on alleged inconsistencies in the RFC. On remand, however, the ALJ should consider Plaintiff's argument here. Pl.'s Brief [DE-11] at 26-29. The ALJ should also consider whether additional clarification in the RFC is necessary. Without an adequate explanation of the ALJ's findings, the court is left to guess about how the ALJ arrived at his conclusions, and meaningful review is frustrated. *Mascio*, 780 F.3d at 637.

## VII. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's brief [DE-11] be ALLOWED, Defendant's brief [DE-12] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 11, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 7 days from the filing of the objections, or September 18, 2026**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir.**

**1985).**

Submitted, this 4th day of September, 2026.

Brian S. Meyers
United States Magistrate Judge